# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
Assigned on Briefs June 10, 2015

## STATE OF TENNESSEE v. JESSE ALLEN CHRISTMAN

### Appeal from the Criminal Court for Davidson County
### No. 2013-C-2643    Steve R. Dozier, Judge

---

### No. M2014-01885-CCA-R3-CD – Filed September 22, 2015

---

The Defendant-Appellant, Jesse Allen Christman, entered guilty pleas to aggravated assault and kidnapping, Class C felonies, with the trial court to determine the length and manner of service of the sentences. After a sentencing hearing, the trial court sentenced him to twelve years in the Tennessee Department of Correction. On appeal, the Defendant argues that the trial court abused its discretion in imposing an excessive sentence and in denying him an alternative sentence. Upon review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent (on appeal) and Jonathan Wing (at hearing), Assistant Public Defenders, Nashville, Tennessee, for the Defendant-Appellant, Jesse Allen Christman.

Herbert H. Slatery, III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

**Plea Submission Hearing.** At the May 29, 2014 plea submission hearing, the State summarized the facts supporting the Defendant's guilty pleas:

> In this case the State would show that on July 10, 2013, at approximately 10:11 a.m. Mr. Christman's mother called the police stating that she had received some text messages from the victim Ms. Hughes. Ms.

Hughes had texted the defendant's mother stating that the defendant had been holding a knife to her throat but that he had fallen asleep and passed out in his bed. And she had been afford it [sic] had opportunity, based on that, to send out text messages from the home.

Police checked the defendant's criminal history upon receiving the call and discovered that Mr. Christman had an outstanding warrant. The police then proceeded to 4701 Old Hickory Boulevard[,] . . . which is an apartment complex, Your Honor. And the defendant and the victim were inside one of the apartments where the defendant lived.

Upon arrival, the victim let police into the apartment and the defendant was taken into custody without incident. Responding officers found multiple knives in the residence when they arrived at various locations in the residence. Upon Detective Corrges (phonetic) arrival, he spoke with the victim. The victim stated she came over to the incident location the night prior on July 9, 2013, to speak with the defendant about him speaking with other woman [sic]. The two had been in a relationship that ended shortly before the day of the kidnapping and assault.

The victim stated when she arrived, the defendant was intoxicated and started to argue with her. She advised that the defendant retrieved a knife from the kitchen and threatened to assault her with it. She stated that when she tried to leave, the defendant chased after her, grabbed her and took her back into the apartment.

At that time, the defendant held a knife to her throat and stated that he was going to kill the victim. The victim stated the defendant held her against her will inside the apartment overnight and refused to let her leave. She stated that the defendant also took her phone against her will and kept it from her to prevent her from calling the police.

Also during the altercation, the defendant stabbed the bathroom door with the knife from the outside while the victim was inside the bathroom. He also used the victim's phone to text the victim's friend who was a gentleman [who] lived in California. Photographs were taken of the text messages. In the text conversation between the defendant and the victim's friend in California, the defendant indicated that he was threatening to kill the victim.

-2-

The victim stated that she was later able to send a text message to the defendant's mother which was previously referenced stating to the defendant's mother that the victim was being held against her will. Detective Corrges read the defendant his Miranda rights at the scene and interviewed him.

During the interview[,] the defendant stated that the victim did come over the prior evening to talk about the defendant speaking with other woman [sic] but at no point had there been any type of altercation. He stated that after simply talking with the victim, the parties went to sleep and that he didn't know anything about knives or the assaultive behavior that I previously referenced.

Those events took place here in Davidson County. Based upon those facts, the State recommend[s] [its] previously announced disposition.

The trial court accepted the Defendant's guilty pleas and set the matter for a sentencing hearing to determine the length and manner of service of the sentences. Pursuant to the plea agreement, the Defendant would receive a sentence between six to nine years for aggravated assault and a sentence between four to six years for kidnapping, with both counts to be served consecutively at 45 percent release eligibility.

**Sentencing Hearing.** At the July 18, 2014 sentencing hearing, the State entered the twenty-five-year-old Defendant's presentence report into evidence. The report reflected that the Defendant's criminal history began with misdemeanor convictions of domestic violence and drug possession in Iowa when the Defendant was twenty-three years old. The Defendant served two days for those offenses. Two months later, in March 2012, the Defendant was charged with misdemeanor DUI and was sentenced to one year of unsupervised probation. Thereafter, he was convicted of domestic violence in August 2012 and in October 2012 in Davidson County, Tennessee. In March 2013, he was convicted of public intoxication and vandalism in Sumner County, Tennessee. All of these convictions were misdemeanors for which the Defendant received probated sentences.

In the presentence report, the Defendant reported that he first began drinking alcohol at age fifteen and stopped at age twenty-four when he was taken into custody for the instant offenses. He reported a frequency of nine to twelve drinks every day. The Defendant first used marijuana when he was thirteen years old, and he reported daily use. Between ages twenty and twenty-three, the Defendant used oxycontin every day. He first started using synthetic marijuana when he was twenty-one. Regarding the instant case,

the Defendant stated, "At the time of the alleged crime I was heavily intoxicated and have no reccolection [sic] of what took place."

The State called one witness at the hearing. Taylor Hughes, the victim, testified that she previously dated the Defendant "[o]ff and on" for about a year and a half. Their relationship ended after the incident that occurred on July 10, 2013. The night before, Hughes went to the apartment that the Defendant shared with his mother to confront him about his inappropriate use of her phone. When she first arrived, the Defendant was passed out from drinking. After Hughes prepared to leave the apartment, the Defendant blocked the door and pushed her back into the living room. When she tried again to flee, the Defendant grabbed her and hit her on the head. Hughes said that the Defendant took her keys and phone and held her overnight at knifepoint.

Hughes stated that the Defendant threatened her with multiple knives and that he stabbed a knife through the bathroom door when she tried to call the police. He also used her phone to send harassing photographs of her to her friend throughout the night. She was aware of the photographs because the Defendant mocked her and left a few messages on her phone. He hit her in the head a few times and threatened her with a chair at one point. These events took place from around 10:00 p.m. to 10:00 a.m. the following morning. Hughes said that the Defendant passed out from drinking that night, and she was able to retrieve her phone and contact his mother.

Hughes testified that since the incident, she was extremely anxious and quit her job for fear that the Defendant would be released on probation. She said she suffered from anxiety and panic attacks. She was aware that the Defendant had a prior history of domestic violence with his ex-girlfriend in Iowa. Upon questioning from the trial court, Hughes said she learned from the Defendant and his mother that he had similar issues before and that the ex-girlfriend had an order of protection against the Defendant. She stated that she had prior domestic incidents with the Defendant and that he was incarcerated for three months because of an earlier assault. She said that the Defendant had also been intoxicated and destructive in the two prior incidents. She acknowledged that the Defendant had not contacted her in the year since the incident.

After the State's proof, the defense called two witnesses. Michelle Christman, the Defendant's mother, testified that the Defendant was born and raised in Iowa. She said that he had a younger sister and that his biological father was not involved in his life. Christman stated that the children's father had physically and emotionally abused her and that she left him when he began to harm the three-year-old Defendant. She said that the children's father also abused alcohol and drugs. She agreed that the Defendant grew up without a stable father figure and that he was deeply affected.

-4-

Christman testified that they moved to Tennessee when the Defendant was fourteen years old. However, the Defendant was unhappy and returned to Iowa at age sixteen to be with his long-term girlfriend. Christman said that she allowed her son to move away because he had earned his GED and because her grandparents still lived in Iowa. He remained there for seven years and then returned to Tennessee in 2012 when he was twenty-three years old. According to Christman, the Defendant had worked at Wal-mart in Iowa and was on track to becoming an assistant manager. However, a co-worker introduced the Defendant to synthetic marijuana and alcohol about four years ago and he became addicted. She testified that "within a very short time, [she] watched [her] son go from a very independent smart young man to where the drugs just took total control over him." She said that she "watched him almost crash and burn."

Christman first became aware of the Defendant's substance abuse issues through his ex-girlfriend in Iowa. She said that the girlfriend "did everything she could to try to help him by taking him to mental hospitals to help him with his mental condition and his drug and alcohol issues." Christman explained that the Defendant's father and paternal grandfather had mental health issues and that the grandfather committed suicide when the Defendant was three years old. She said that the Defendant was diagnosed with ADHD and bipolar disorder and that he suffered from migraines and depression. The Defendant began to see a psychologist when he was about eleven years old.

Christman testified that she was at work when the victim contacted her about being in danger. She then called the police to check on the situation because she could not leave her job. She was concerned because the victim's text message conveyed an "extremely volatile" situation, and she told the 911 dispatcher that the Defendant could be violent. Christman agreed that the Defendant had been arrested twice before for assaulting the victim. She further acknowledged seeing the damage in the bathroom door from where her son had stabbed it.

Christman said that she loved her son and supported him but that she would not tolerate his threatening behavior. Since the Defendant's incarceration, she had visited him almost weekly and had noticed "a huge change" now that he was drug and alcohol-free. Christman stated that her son had grown and matured in the past year and that he was remorseful and understood the seriousness of his actions. She was certain that with proper treatment, the Defendant would be an asset to society.

The Defendant testified that he had been in jail for 373 days. He could not remember what happened on July 10, 2013, because he "drank a half gallon of vodka that evening and [he] blacked out." He had also used marijuana and synthetic marijuana that night. The Defendant said he could "vaguely" recall the victim coming to the apartment. He did not remember using knives or engaging in threatening behavior. He

-5-

acknowledged that he was not truthful with the police and that he minimized his actions. He stated that he lied because he did not want to get into trouble. He reported that he "liked to throw knives at the wall" and that the victim was upset because they were breaking up. He also told police that the victim had a bruise on her head when she arrived at the apartment.

The Defendant agreed that he previously assaulted the victim on August 19, 2012. He said that he had been drinking that day and "vaguely" remembered the situation. He conceded that he threatened to stab the victim because she would not buy him beer. For that first incident, the Defendant received probation that could be expunged from his record. However, his probation was revoked after he was once again convicted of domestic violence in October 2012 for punching the victim in the stomach. The Defendant said he served three months in jail after the second incident and was then released on probation. His second probated sentence was revoked due to his arrest in July 2013. He did not dispute the victim's accounts of their domestic disputes, and he did not hold the victim responsible for these incidents.

The Defendant acknowledged that he had four incidents of domestic violence in his history, including one assault involving the woman in Iowa and three assaults involving the victim. He stated that he was convicted of assault in Iowa for grabbing his ex-girlfriend by the throat and threatening to kill her family. He said he was using alcohol and synthetic marijuana on a daily basis at the time. The Defendant acknowledged that there was a pattern with both his ex-girlfriend in Iowa and the victim in Tennessee. He stated that each time he drank, he seemed to become violent and combative, especially with women. He said he felt "absolutely awful about it" and that he did not intend to harm people he loved.

The Defendant testified that his family relationship with his mother and sister was "pretty good." He had no contact with his father and his maternal grandfather was the only male role model in his life. He said he first began to drink at age sixteen and he tried synthetic marijuana when he was twenty. He had also tried other drugs and agreed that he had a problem with addiction. On two occasions, he checked into a hospital in Iowa for substance and mental health issues, but he was not prepared for treatment at the time.

The Defendant opined that he had let his mother down. He felt that it was important to receive treatment for his issues. He stated that he had learned from his mistakes. Since being in custody, he had never been disciplined, and he completed two treatment programs dealing with violence and alcohol. He agreed that his issues were serious and that he had to work toward recovery every day.

After hearing the proof and arguments from counsel, the trial court took the matter under advisement to determine the appropriate length and manner of service for the Defendant's two convictions. The court issued a written sentencing order on August 26, 2014. Specifically, the court sentenced the Defendant to seven years for aggravated assault and five years for kidnapping, for an effective sentence of twelve years' incarceration to be served at 45 percent. It is from this order that the Defendant now timely appeals.

## ANALYSIS

On appeal, the Defendant contends that the trial court erred in imposing an excessive sentence and in denying him all forms of alternative sentencing. Specifically, he argues that the court misapplied an enhancement factor and failed to apply appropriate mitigating factors. The Defendant further asserts that a sentence of confinement ignores his strong potential for rehabilitation and is not the least severe measure necessary to achieve the purposes of sentencing. The State responds that the trial court properly imposed a twelve-year sentence of confinement. We agree with the State.

We review the length and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Moreover, the misapplication of enhancement or mitigating factors does not invalidate the imposed sentence "unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). "A court only abuses its discretion when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" State v. Sihapanya, ___ S.W.3d ___, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *2 (Tenn. Apr. 30, 2014) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)). The defendant has the burden of showing the impropriety of the sentence on appeal. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts.

Pursuant to the 2005 amendments to the Sentencing Act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b)(1)-(7). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). A court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). Id. § 40-35-102(6)(D). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Tennessee Code Annotated section 40-35-102(5) gives courts guidance regarding the types of defendants who should be required to serve their sentences in confinement:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

We note that a trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). "A defendant's sentence is based on 'the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background.'" State v. Trotter, 201 S.W.3d 651, 653 (Tenn. 2006) (quoting Ashby, 823 S.W.2d at 168). The seriousness of the offense alone may justify a trial court's denial of alternative sentencing. See Trotter, 201 S.W.3d at 655. Following the 2005 amendments to the Sentencing Act, a defendant is no longer entitled to a presumption that he or she is a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008).

Here, the Defendant was eligible for probation because each sentence was ten years or less and because the offenses were not specifically excluded by statute. See T.C.A. § 40-35-303(a); State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986) (concluding that a defendant is eligible for probation if each of the sentences is ten years or less regardless of the effective sentence). However, an eligible defendant "is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Cmts. Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b). The defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted). When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." Sihapanya, 2014 WL 2466054, at *3.

The Defendant also argues that the trial court improperly denied his request for a community corrections sentence despite acknowledging the Defendant's eligibility under the "special needs" category. The purpose of the Community Corrections Act of 1985 was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" T.C.A. § 40-36-103(1). Eligible offenders under the Community Corrections Act include:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (C) Persons who are convicted of nonviolent felony offenses;
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

Id. § 40-36-106(a)(1)(A)-(F). Pursuant to Tennessee Code Annotated section 40-36-106(c), an offender who does not meet the above criteria "and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community" may be considered eligible for a community corrections sentence. Id. § 40-36-106(c). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36-106(d).

Pursuant to the plea agreement in this case, the Defendant could have received an effective sentence ranging between ten and fifteen years for his two Class C felony convictions. Specifically, the Defendant was subject to a sentence between six to nine years for aggravated assault and between four to six years for kidnapping, with both counts aligned consecutively. Despite his status as a standard offender, the Defendant agreed to serve his sentences at 45 percent release eligibility (Range III). See Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997) ("[A] knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility").

-10-

In determining the appropriate length of the Defendant's sentences, the trial court found three applicable enhancement factors and no mitigating factors. It applied enhancement factor (8), that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. See T.C.A. § 40-35-114(8). The court noted that the Defendant had violated his probation on two occasions and had committed misdemeanor domestic violence against the same victim. The court also found enhancement factor (14) applicable "because the [D]efendant used private trust to encourage the victim's presence in his home." See id. § 40-35-114(14). For the kidnapping conviction only, the court applied enhancement factor (9) because the Defendant used a knife during the commission of that offense. See id. § 40-35-114(9). After considering the Defendant's potential for rehabilitation, the evidence presented at the hearings, the presentence report, and the mitigating and enhancement factors, the court imposed a seven-year sentence for aggravated assault and a five-year sentence for kidnapping. Therefore, the Defendant received a mid-range sentence of twelve years for his two convictions.

With regard to the manner of service of the twelve-year sentence, the court provided the following rationale for imposing a sentence of confinement:

> In this case, the Court finds that the defendant would be eligible for consideration of community corrections under the "special needs" exception. T.C.A. § 40-36-106(c). However, the defendant's prior attempts at alternative sentencing have been unsuccessful. On August 23, 2012, the defendant pled guilty to one count of domestic violence and was sentenced to eleven months and twenty nine days probation. Less than three months later, the defendant was arrested and convicted of one count of domestic violence on October 5, 2012. The defendant was sentenced to eleven months and twenty nine days probation. While on that probation, he was arrested for the charges in the current case in July 2013. All of these assaults involved the same victim, Ms. Hughes. The victim has properly used the criminal justice system for help. The criminal justice system has attempted to address the defendant's issues through alternative sentencing, but these attempts have clearly not helped the defendant control his domestic violence issues toward the victim.
>
> In addition to the multiple assaults of Ms. Hughes, the defendant has prior criminal behavior by assaulting his girlfriend in Iowa. While the Court recognizes that the defendant has substance abuse issues, the Court's paramount concern is the safety of the victim and the community. Based upon the nature of the crime, past violent behavior, and the defendant's past inability to comply with alternative release, the Court finds that he is not a

viable candidate for community corrections. Therefore, the Court imposes an effective twelve year sentence to serve.

The Defendant argues that the trial court erred in determining the length of his sentences and in denying alternative sentencing. First, he contends that the court misapplied enhancement factor (14) where the State presented no evidence that the Defendant abused the dating relationship and caused the adult victim to be particularly vulnerable. See State v. Gutierrez, 5 S.W.3d 641, 645-46 (Tenn. 1999) (noting that a finding of private trust based on the mere existence of a relationship between competent adults may result in overbroad application of this enhancement factor). However, we note that even if the court erred, the misapplication of an enhancement factor does not remove the presumption of reasonableness of the imposed sentences. See Bise, 380 S.W.3d at 706; see also State v. Jeffrey Scott, No. W2009-00707-CCA-R3-CD, 2011 WL 2420384, at *33-34 (Tenn. Crim. App. June 14, 2011), perm. app. denied, (Tenn. Oct. 18, 2011) (affirming sentences despite overbroad application of enhancement factor (14) where trial court properly applied remaining two enhancement factors). Here, the Defendant does not challenge the trial court's reliance on enhancement factors (8) or (9), and we conclude that the record supports their application.

The Defendant also asserts that the trial court should have mitigated his sentences based on his sincere remorse and his acceptance of responsibility. See T.C.A. § 40-35-113(13) (providing that a court may consider "[a]ny other [mitigating] factor consistent with the purposes of this chapter"). Although the record reflects that the Defendant was sorry and accepted responsibility for his assaultive behavior, he has not otherwise shown the impropriety of his sentences. We note that we are bound to a trial court's imposition of a within-range sentence that is otherwise consistent with the purposes and principles of the Sentencing Act, even if we would have preferred a different result. See Carter, 254 S.W.3d at 346. Because the statutory enhancement and mitigating factors are advisory only, and because "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion[,]" we conclude that the trial court did not err in its sentencing determinations where the record otherwise supports the within-range sentences imposed. See T.C.A. § 40-35-114(c)(2) (2010); Carter, 254 S.W.3d at 345; see also Bise, 380 S.W.3d at 709 (upholding a mid-range sentence despite finding that the single enhancement factor had been improperly applied). Here, the record supports the length of the sentences imposed by the trial court.

Next, the Defendant argues that the trial court improperly imposed a sentence of confinement. He contends that an alternative sentence "would best promote the ends of justice and the interests of the public and the defendant." He asserts that twelve years' incarceration is not necessary to protect the community and would not aid in his rehabilitation. While acknowledging his previous failures at rehabilitative measures and

the seriousness of his offense, the Defendant maintains that the record supports the imposition of an alternative sentence.

Based on the record, we conclude that the trial court did not abuse its discretion in sentencing Defendant to confinement. As an initial matter, we note that the Defendant presented no proof at the sentencing hearing in support of his suitability for probation, and defense counsel only argued for a community corrections sentence. In reaching its sentencing decision, the trial court expressly considered the factors in Tennessee Code Annotated section 40-35-210 and the sentencing principles in Tennessee Code Annotated sections 40-35-102 and 103. The court noted that the Defendant held the victim at knifepoint for twelve hours and that the assaultive behavior ended when the Defendant passed out from drinking. The court emphasized the seriousness of the situation and the fact that the circumstances could have been worse. Although the court acknowledged the Defendant's substance abuse issues, it declined to sentence the Defendant to community corrections out of concern for the victim and the public.

The record fully supports the court's finding that the Defendant had a history of violence and repeated inability to comply with release into the community. Significantly, the Defendant received two probated sentences for misdemeanor domestic violence against the same victim prior to the instant offenses. His first probationary sentence was revoked in October 2012, and he served three months in custody until around December 2012. Thereafter, he committed the instant offenses on July 10, 2013, and remained incarcerated from that point. Although the Defendant contends that he should receive treatment in the community, his history reflects that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully" to him. T.C.A. § 40-35-103(1)(A). His prior record included at least six misdemeanor convictions involving drug and alcohol use, and the first offense was committed in 2012, when the Defendant was twenty-three years old. Moreover, the presentence report reflects that the Defendant began to drink alcohol and use drugs at age thirteen, and his dependency ended at age twenty-four due to his incarceration. Accordingly, the trial court properly found that prior rehabilitative measures were unsuccessful in helping him control his substance abuse or his domestic violence issues.

Because the record reflects that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the court's sentence in this case. Caudle, 388 S.W.3d at 280. Accordingly, we uphold his effective twelve-year sentence in the Tennessee Department of Correction.

## CONCLUSION

Upon review, we affirm the judgments of the Davidson County Criminal Court.

_____

CAMILLE R. MCMULLEN, JUDGE